UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10965-RGS

LINDA HEWLETT

v.

INTERNATIONAL BUSINESS MACHINES CORP.

MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD

October 21, 2022

STEARNS, D.J.

Petitioner Linda Hewlett seeks to vacate an arbitration award in favor of Respondent International Business Machines Corporation (IBM), arguing that IBM deliberately withheld from her and the Arbitrator incriminating evidence that would have been critical to her case. IBM opposes. For the following reasons, the court will <u>DENY</u> the motion.

## BACKGROUND

Hewlett was an employee of IBM beginning November 7, 2017. After her termination from IBM on October 12, 2018, Hewlett filed a Demand for Arbitration, alleging that her termination violated the Age Discrimination in Employment Act, 9 U.S.C. § 1, *et seq*. During the arbitration proceeding,

Hewlett served document requests on IBM for "[f]rom 2012 to the present, all documents reflecting studies, analyses, audits, surveys, communications, or other documents that set forth any plan, strategy goal, or effort to change the age demographics of IBM's workforce." Pet'r's Mem. Supp. Mot. Vacate (Pet'r's Mem.), Ex. I (Dkt # 17-9) at 18. IBM objected to the request because it was "overly broad, unduly burdensome and disproportionate to the needs of this case." *Id.* Notwithstanding its objection, IBM also stated that "no responsive documents exist." *Id.*

After IBM moved for summary judgment on July 13, 2020, Hewlett filed an opposition that highlighted an EEOC Letter of Determination finding reasonable cause to believe that IBM had engaged in a campaign to reduce the number of its older workers. *Hewlett v. Int'l Bus. Mach. Corp.*, 2021 WL 5855270, at *3 (D. Mass. Nov. 5, 2021). She also submitted Notices of Supplemental Evidence, including "IBM's high-level corporate planning documents that were made available during a separate litigation" (the *Langley* documents). *Id.* Hewlett offered this evidence to "evince IBM's systemic terminations of older workers in favor of millennials." *Id.*, at *9.

On October 26, 2020, the Arbitrator granted IBM's motion for summary judgment. The Arbitrator found that:

> IBM has articulated, and supported by substantial evidence, its
> position that [Hewlett] was lawfully terminated from her
> employment because she failed, repeatedly and over a
> substantial period of time, to meet her performance obligations.
> Her job deficiencies were well and continuously
> documented . . . .

Pet'r's Mem, Ex. E (Dkt # 17-5) at 7-8.  The Arbitrator also noted that Hewlett's Notices did not present evidence that would "contradict[] IBM's stated reason for terminating Ms. Hewlett in this case," *id.* at n.1, and that any evidence of IBM engaging in a pattern of age discriminatory terminations had no weight "with respect to her own employment or termination," *id.* at n.3.

On November 26, 2020, Hewlett filed a motion for reconsideration arguing in part that the Arbitrator "erred in refusing to hear or compel comparator evidence."  Pet'r's Mem (Dkt # 17) at 1.  The Arbitrator denied the motion on December 30, 2020.  The Arbitrator noted that while he "considered the summary EEOC Letter of Determination" and the *Langley* documents, they were "irrelevant to the issues presented in Ms. Hewlett's case" because they were based on substantially different facts. *Id.*, Ex. H (Dkt # 17-8) at 2-3.

Hewlett moved to vacate the arbitration award in this court on March 28, 2021, claiming that the Arbitrator manifestly disregarded the law, and

refused to allow discovery and hear relevant evidence.  The court denied her motion on November 5, 2021, finding "Hewlett has failed to show that the Arbitrator's discovery rulings and determination of the scope of the record reflect any misconduct or otherwise deprived Hewlett of a fair hearing." *Hewlett*, 2021 WL 5855270, at *9.  The court also held that Hewlett's evidence of systemic terminations of older workers was distinguishable from her case.  Unlike the workers in *Langley* or the EEOC case, "Hewlett had been at IBM for less than a year and had a contentious relationship with her direct superior, resulting in a [performance improvement plan] and subsequent termination." *Id.*

In September of 2021, Hewlett's counsel uncovered documents that IBM had produced in another federal court.  Identified were "emails between IBM's highest level executives," including IBM's former CEO and former Senior Vice President of Human Resources, "referring to IBM's older workers as 'dinobabies' and discuss[ing] that they needed to be made an 'extinct species'" and asking for ideas on how to increase IBM's percentage of millennial employees.  Pet'r's Mem. at 5.

On November 10, 2021, Hewlett moved for relief from judgment based on IBM's failure to produce the same documents in her proceeding.  Again, the Arbitrator denied the motion, finding that the new evidence did not

4

warrant the extraordinary remedy of relief because it did not show misconduct foreclosing a full and fair preparation of Hewlett's case.  Pet'r's Mem., Ex. A (Dkt # 17-1) at 2.  Hewlett now moves to vacate the Arbitrator's latest order denying her request for relief from judgment.

## DISCUSSION

Judicial review of an arbitral award is "extremely narrow and exceedingly deferential." *Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 496 (1st. Cir. 2005), quoting *Wheelabrator Envirotech Operating Servs., Inc.* v. *Mass. Laborers Dist. Council Loc. 1144*, 88 F.3d 40, 43 (1st Cir. 1996).  Even a reviewing court's determination that "the arbitrator[ ] committed error — even serious error — does not justify setting aside the arbitral decision." *Cytyc Corp. v. DEKA Prods. Ltd.*, 439 F.3d 27, 32 (1st Cir. 2006).

Section 10(a) of the Federal Arbitration Act (FAA) provides four exceptions to the extreme deference courts are to give arbitration awards:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Hoolahan v. IBC Advanced Alloys Corp.*, 947 F.3d 101, 112 (1st Cir. 2020).

Hewlett argues that two of the exceptions apply here. She argues that vacatur should be granted because: (1) the award was procured by fraud, § 10(a)(1); and (2) the arbitrator refused to hear pertinent and material evidence, § 10(a)(3). Pet. to Vacate (Dkt # 16) ¶¶ 25-29. IBM argues that neither exception is pertinent.[1]

## A.  9 U.S.C. § 10(a)(1)

Hewlett contends that vacatur is warranted because IBM's arbitration award was procured through fraud.  Pet'r's Reply Supp. Mot. Vacate (Dkt # 28) at 14.  Courts may vacate an arbitration award for fraud where "there is clear and convincing evidence of fraud and where due diligence could not have discovered it prior to the arbitration." *Ameriprise Fin. Servs. v. Brady*, 325 F. Supp. 3d 219, 231 (D. Mass. 2018), citing *Odeon Cap. Grp. v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017).  The test is whether: "(1) respondent engaged in fraudulent activity; (2) even with the exercise of due

---

[1] The parties also dispute whether this motion is timely.  The court does not address whether Hewlett's motion is timely because it fails on its substance.

diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration." *Odeon*, 864 F.3d at 196.  Hewlett fails to meet the third prong.

Fraud is materially related to an issue in the arbitration if there is "a nexus between the alleged fraud and the decision made by the arbitrators, although petitioner need not demonstrate that the arbitrators would have reached a different result."  *Id.*  Hewlett cannot establish that such a nexus exists because the Arbitrator denied Hewlett's motion to compel discovery on a basis separate from IBM's allegedly fraudulent statement that "no responsive documents exist."  Pet'r's Mem, Ex. I, at 18-19.  The Arbitrator had refused to compel production "because that request was 'over-broad in scope and time and dramatically out of proportion to the nature and scope of Ms. Hewlett's claims' and sought information 'dating back to five years *before* she was hired.'"  *Id.*, Ex. A (Dkt # 17-9) at 4; *id.*, Ex. K (Dkt # 17-11) at 2.  The Arbitrator confirmed that his decision was not influenced by IBM's erroneous answer.  *Id.*, Ex. A, at 4 ("I was not, as Ms. Hewlett now contends, misled.").

## B.  9 U.S.C. § 10(a)(3)

Hewlett also argues that the Arbitrator's refusal to hear the evidence is "clear grounds for vacatur."  However, an arbitrator "is not bound to hear all

of the evidence tendered by the parties; [rather], he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Hoteles Condado Beach v. Union de Tronquistas Loc. 901*, 763 F.2d 34, 39-40 (1st Cir. 1985). "Indeed, courts have expressly held that the purposes of arbitration - i.e., to provide an efficient and informal alternative to litigation - encourage arbitrators to streamline the arbitrative process by focusing attention on evidence essential to its ultimate holding." *Nat'l Cas. Co. v. First State Ins. Grp.*, 2005 WL 8175828, at *7 (D. Mass. Apr. 28, 2005), *aff'd*, 430 F.3d 492 (1st Cir. 2005).

The court may only vacate an arbitration award if the arbitrator's refusal to hear evidence is "in bad faith or so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987). Vacatur is "appropriate only when the exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing," *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 932 F.3d 1, 10 (1st Cir. 2019) (internal citations omitted), such as where "evidence effectively excluded by the arbitrator was both 'central and decisive' to the [party's] position,'" *Hoteles Condado Beach*, 763 F.2d at 40 (citation omitted).

Hewlett has not met this burden. Although the Arbitrator did not directly view the documents in question, he did consider the evidence before denying Hewlett relief from judgment. In moving for relief, Hewlett described the evidence in detail, identifying what she viewed to be its most critical features and offering her interpretation of its import. *See* Pet'r's Mem., Ex. M (Dkt # 17-13) at 3-5, 8, 10-12, 18. The Arbitrator held that, even if the documents "show[ed] what Ms. Hewlett's counsel has alleged," their absence in Hewlett's hearing was insufficient to merit relief. *Id.*, Ex. A at 2-3. Further, even assuming the truth of Hewlett's interpretations of their relevance, the Arbitrator found there was "simply no evidence discovered or offered by Ms. Hewlett [that] shows that any of the decision makers involved in her termination were acting upon or even aware of any edict from on high with respect to IBM's older employees." *Id.* at 3.

This court does not have license to question the weight the Arbitrator gave to the evidence. *See Dialysis Access Ctr.*, 932 F.3d at 10-11 ("What DAC's gripe really comes down to is the weight given to that evidence by the arbitrator. And on that front we have made pellucid that it is not our place to chime in on the weight allotted to any given piece of evidence submitted to the arbitrator."). Further, it is not misconduct for an arbitrator to determine that he does not need to hear certain evidence when he is able to base his

finding on other relevant evidence before him. *See Nat'l Cas. Co.*, 2005 WL 8175828, at \*8, quoting *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (1st Cir. 1990) ("If, after considering the evidence and arguments presented to it, the Panel found that it did not need to review the withheld documents, it was entitled to issue an award without requiring their production.   Such procedural informality is inherent in the nature of arbitration proceeding and, without more, does not amount to misconduct."); *Hoteles Condado Beach*, 763 F.2d at 40 ("Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.").

Here, the Arbitrator considered an extensive record, *see* Pet'r's Mem, Ex. E, at 1-2 (discussing consideration of "extensive memorandum of law, exhibits and Statements of Undisputed Material Facts," and "lengthy oral arguments"), which already included evidence to support Hewlett's theory of a top-down machination to oust older workers from IBM.  Resp.'s Opp'n (Dkt # 25) at 17 (discussing Hewlett's submission of "comments about Millennials by Rometty, the EEOC Letter of Determination, planning documents from other business unit discussing seniority mix and age demographics, and certain discovery documents from [a similar matter]").  At each stage of the proceeding, the Arbitrator rejected Hewlett's argument and determined that

it was irrelevant to Hewlett's termination because she could not establish a nexus between those mentioned in the evidence and the decisionmakers that terminated her.  Pet'r's Mem., Ex. E, at 10-11; *id.*, Ex. H at 2-3; *id.*, Ex. A, at 2.

The First Circuit cases cited by Hewlett in which vacatur was granted are distinguishable because the evidence at issue was the only evidence in support of the movant's position.  *Compare Hoteles Condado Beach*, 763 F.2d at 40 ("[N]o other evidence was available to substantiate or to refute the Company's charges that Otero had violated the rules regarding employment."), *with Ameriprise Fin. Servs.*, 325 F. Supp. 3d at 227 ("The evidence at issue in *Hoteles Condado Beach* was the only available evidence. Ameriprise does not seem to contend that this was the only evidence available to the Panel. Nor does Ameriprise contend that it was otherwise unable to put on its case."); *Nat'l Cas. Co.*, 2005 WL 8175828, at *6-7 ("In the instant case, National Casualty has not argued that the withheld documents were the only evidence in support of its position.  Moreover, the record indicates that National Casualty was afforded the opportunity to present its case by proffering available evidence, cross-examining opposing witnesses and, importantly, calling attention to the significance of First State's refusal to produce the documents.").

## ORDER

For the foregoing reasons, Hewlett's Motion to Vacate the Arbitration Award is <u>DENIED</u>.  The Clerk will enter judgment for IBM and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE